UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

THOMAS R. BECNEL and JARDINE
VENTURES, LLC,

               Plaintiffs,

            - against -

DEUTSCHE BANK AG and DEUTSCHE
BANK SECURITIES, INC.,

              Defendants.

------------------------------------------------------------ X

**OPINION AND ORDER**

**11 Civ. 1615 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/21/11

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Thomas R. Becnel and Jardine Ventures, LLC (collectively,

"Becnel") sued Deutsche Bank AG and Deutsche Bank Securities, Inc.

(collectively, "Deutsche Bank") for state-law claims of fraud, conspiracy to

commit fraud, fraudulent concealment, aiding and abetting fraud, breach of

fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract and

breach of the implied duty of good faith and fair dealing.  Deutsche Bank filed a

motion to dismiss Becnel's complaint as time-barred, which this Court granted on

("September Opinion").[1]  The Clerk of the Court entered final judgment on

September 8, 2011 ("September Judgment").[2]

Becnel now moves under Federal Rules of Civil Procedure 59 and 60

to alter or amend the September Judgment.[3]  Specifically, Becnel seeks

reinstatement of his fraud claim, or, in the alternative, leave to amend the

complaint in order to assert a modified theory of fraud.  For the reasons stated

below, the motion is denied.

## II.    BACKGROUND

The background to this motion is fully set forth in the September

Opinion.  Briefly stated, Becnel claimed that Deutsche Bank conspired with

Presidio Growth LLC and Presidio Advisory Services, LLC ("Presidio") in order

to persuade him to take part in a tax shelter program known as the Hubbard

Strategic Investment Fund, which operated according to the BLIPS Strategy

devised by the KPMG accounting firm.  As a part of that strategy, Becnel took out

a loan from Deutsche Bank, which, along with Presidio, charged Bencel fees to

manage the loan proceeds.  Becnel's original complaint alleged that those loans

---

[1]      *See Soward v. Deutsche Bank AG*, – F. Supp. 2d –, No. 10 Civ. 9248, 2011 WL 3875347 (S.D.N.Y. Sept. 1, 2011).

[2]      *See* Docket No. 19.

[3]      *See* Docket No. 23.

were a sham because Deutsche Bank never relinquished control of the loan

proceeds.  Accordingly, Becnel claimed that any fees that Deutsche Bank and

Presidio charged to manage the loan proceeds were fraudulent.[4]

       Instead of persisting in the claim that the loan from Deutsche Bank

was a sham *in toto*, Becnel seeks leave to modify his theory of fraud.  He would

now allege solely that while Deutsche Bank did in fact create a loan, the loan it

created was a single-tier market-rate loan, instead of a dual-tier above-market loan

with a loan premium, even though he paid Deutsche Bank to create a loan

premium.[5]  Specifically, he alleges that Presidio conspired with Deutsche Bank to

enter into interest rate swaps that "effectively converted the loans [from nominally

above-market rate loans with a loan premium] to variable-rate loans at market

rates, with no premium," and that Deutsche Bank concealed its knowledge of that

conversion.[6]  Finally, Becnel claims that he could not have learned the information

---

[4]    *See Soward*, 2011 WL 3875347, at *1-2.

[5]    *See* 9/14/11 Report of Dr. Frank J. Fabozzi ("Fabozzi Report"), Ex.
1 to Declaration of Mark J. Wilson, counsel for Plaintiffs, at 7.  *See also See*
10/6/11 Declaration of Thomas J. Becnel ("Becnel Decl.") at 3.  Regardless of the
form of the loan, the total proceeds were the same.

[6]    Becnel's Memorandum of Law in Support of Motion to Alter or
Amend Judgment ("Pl. Mem.") at 2.

necessary to support this modified theory of fraud until December 2010.[7]

## III.    APPLICABLE LAW

### A.    Post-Judgment Leave to Amend Under Rule 15

Except for amendments as of right under Federal Rule of Civil Procedure 15(a)(1), a party must obtain the court's permission to amend a pleading.  Although Rule 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires," the Second Circuit states that "Rule 15's liberality must be tempered by considerations of finality" when leave to file an amended complaint is sought post-judgment.[8]  Accordingly, "[a] party seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to [Rule 59(e) or 60(b)]."[9]  This is so because Rule 15's "liberal amendment policy [should not] be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation."[10]  Nonetheless, "the liberal spirit of Rule 15 [does not necessarily

---

[7]    *See id.*

[8]    *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011).

[9]    *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).

[10]    *National Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991) (quotation marks and citations omitted).

dissolve] as soon as final judgment is entered."[11]  Accordingly, the Second Circuit holds that it is reversible error for a court to address only concerns of finality without also taking into "account the nature of the proposed amendment," in light of the "strong preference for resolving disputes on the merits."[12]

### B.    Newly Discovered Evidence Under Rules 59(e) and 60(b)

While Rule 59(e) does not explicitly list the grounds on which reconsideration may be granted, one ground on which courts will generally grant a Rule 59(e) motion is "the availability of new evidence."[13]  Additionally, under Rule 60(b)(2), a party may seek reconsideration on the basis of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."[14]

---

[11]     *Williams*, 659 F.3d at 213.

[12]     *Id.* at 212-13 (citation marks and quotations omitted).

[13]     *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation marks and citations omitted).

[14]     There are, of course, many other grounds on which a court may grant relief.  Under Rule 59(e), a court may grant relief based on "an intervening change of controlling law . . . or the need to correct a clear error or prevent manifest injustice."  *Virgin Atlantic Airways*, 956 F.2d at 1255 (quotation marks and citations omitted).  Under Rule 60(b), a court may grant relief if the judgment was issued due to "mistake, inadvertence, surprise, or excusable neglect" or on the basis of fraud; if the judgment is void or satisfied; or indeed, for any other reason that justifies relief.  Becnel does not appear to raise any of these arguments.

-5-

Whether relief is sought under Rule 59(e) or Rule 60(b)(2), courts apply the same strict standard for determining what qualifies as "newly discovered evidence." In order to meet that standard, the moving party must demonstrate that

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.[15]

## IV.    DISCUSSION[16]

### A.    Because Becnel Has Not Presented Any New Evidence He Is Not Entitled to Reconsideration

The only basis for relief under Rules 59(e) and 60(b)(2) that Becnel puts forth is that he has newly discovered evidence in the form of the report of Dr. Frank J. Fabozzi. After reviewing all of the evidence available to Becnel when he filed his complaint, Dr. Fabozzi concluded that Becnel would not have been "able

---

[15]    *United States v. International Broth. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001).

[16]    In his opening brief, Becnel also simply stated that he disagreed with the September Opinion's finding that "the Complaint does not sufficiently allege facts in support of the discovery rule . . . ." Pl. Mem. at 2. Mere disagreement with an opinion, however, is not a basis for reconsideration. *See Clavizzao v. United States*, No. 08 Civ. 6434, 2010 WL 6836461, at *4 (S.D.N.Y. Oct. 25, 2010). Accordingly, I will construe this motion as it most plausibly presents itself: as one seeking leave to amend on the basis of newly discovered evidence.

to identify the fraud [he now seeks leave to raise via an amended pleading] using reasonable due diligence" until December 21, 2010.[17]  It strains credulity, however, to claim that expert conclusions based solely on information available to the plaintiff at the time the complaint was filed are facts of which the plaintiff was "justifiably ignorant . . . despite due diligence."[18]  If this were not so, parties would be able to raise arguments "that could have been raised prior to the entry of judgment"[19] simply by scrutinizing the motion opinion and finding an expert willing to disagree with it after the fact.

That is precisely what Becnel has done here.  While he states that "Dr. Fabozzi's report was not available at the time Plaintiffs responded to Deutsche Bank's motion to dismiss,"[20] he offers no explanation – other than the bare fact that he chose not to seek it – for why that is so.  In a case involving a fraud as complex as this one, it simply defies common sense for Becnel to claim that he exercised due diligence even though he waited until after his case was dismissed and final judgment was entered to obtain an expert report that reveals the above-described

---

[17]     *Id.* at 7.

[18]      *International Broth. of Teamsters*, 247 F.3d at 392.

[19]     *Bonded Concrete, Inc. v. D.A. Collins Constr. Co*, 29 Fed. App'x 725, 726 (2d Cir. 2002).

[20]     10/6/11 Declaration of Mark J. Wilson, counsel for Plaintiffs, at 2.

modified theory of fraud that may rescue his case.  Accordingly, I find that the Fabozzi Report does not qualify as newly discovered evidence.[21]  As Becnel provides no other argument in support of his motion, relief from the September Judgment is not warranted.

### B.     Becnel May Not Amend His Complaint

 Based on the conclusions in the Fabozzi Report, Becnel argues at length that he could have amended his Complaint to raise an issue of fact that would have precluded granting Deutsche Bank's motion to dismiss.[22]  That argument, however, puts the cart before the horse.  Because Becnel's claims have

---

[21]     Courts in this district have reached a similar conclusion in criminal cases.  *See, e.g.*, *Pri-har v. United States*, 83 F. Supp. 2d 393, 401 (S.D.N.Y 2000); *Massaro v. United States,* No. 97 Civ. 2971, 1998 WL 241625, at *2 (S.D.N.Y. May 12, 1998).  While no court in this district has explicitly addressed whether these kinds of expert reports qualify as newly discovered evidence in the civil context, courts in other circuits have held that they do not.  *See, e.g.*, *Dudenhefer v. Davol, Inc.*, No. 94-30551, 1995 WL 241809, at *3 (5th Cir. Apr. 14, 1995); *Walsh v. Chez,* No. 06 C 4958, 2008 WL 539146, at *2-3 (N.D. Ill. Feb. 22, 2008).

Becnel also submitted a declaration in support of this motion.  However, as Deutsche Bank correctly points out, that declaration simply describes the state of his understanding prior to filing the complaint, and accordingly does not qualify as newly discovered evidence.  *See* Deutsche Bank's Memorandum of Law in Opposition to Plaintiffs' Motion to Alter or Amend Judgment ("Def. Mem.") at 4.

[22]     *See* Pl. Mem. at 4-6; *see also* Becnel's Reply Memorandum of Law in Support of Motion to Alter or Amend Judgment ("Rep. Mem.") at 3-11.

already been dismissed, there is, properly speaking, no complaint to amend until relief from the judgment is granted.[23]  As explained above, Becnel is not entitled to such relief.  Accordingly, concerns for finality and the expeditious termination of litigation clearly weigh in favor of denying Becnel post-judgment leave to amend his complaint.

 As noted above, however, Rule 15's liberal amendment policy does not entirely disappear once final judgment has been entered.  Instead, courts must consider the nature of the proposed amendment and whether, in light of the general preference to decide cases on the merits, leave to amend should be granted.  It is to this question that I now turn.

 Under New York law, an action for fraud or conspiracy to defraud must be brought within six years of the fraud or within two years of the date when the plaintiff discovered the fraud, or with reasonable diligence could have discovered it.[24]  This is an objective standard that asks "whether circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded."[25]  If such circumstances exist and the plaintiff does not

---

[23] *See Mitsubishi Aircraft Int'l v. Brady*, 780 F.2d 1199, 1203 (5th Cir. 1986).

[24] *See* N.Y. C.P.L.R. § 213(8).

[25] *Gutkin v Siegal*, 926 N.Y.S.2d 485, 486 (1st Dep't 2011).

investigate them within two years, he will be charged with knowledge of the fraud, and any complaint he brings thereafter will be untimely.[26]

According to the Fabozzi Report, Becnel could not have learned of Deutsche Bank's role in concealing the effect of the interest rate swap until Amir Makov, one of Presidio's principals, testified in a criminal case in 2009.  Even with that testimony, the Fabozzi Report states that there was no conclusive proof against Deutsche Bank on this issue until the United States Attorney for the Southern District of New York released the Non-Prosecution Agreement ("NPA") in December 2010.[27]  On this basis, Becnel asserts that the modified theory of fraud he seeks leave to plead – which, instead of alleging  that the loan from Deutsche Bank was a sham *in toto*, alleges that Deutsche Bank fraudulently concealed the fact that the interest rate swap converted the loan to one without a premium component –  would be brought well within the two-year statute of limitations based on the discovery rule.[28]

What the Fabozzi Report does not explain, however, is why Becnel failed to investigate the *possibility* that Deutsche Bank was involved in concealing

---

[26]     *See id.*

[27]     *See* Fabozzi Report at 6-7.

[28]     *See* Becnel Decl. at 8.

the effect of the interest rate swap.  In 2003, well before the NPA was released,

Becnel knew – or at least could allege – that Deutsche Bank's involvement in the

BLIPS tax shelter scheme "was approved at the highest levels of the

organization."[29]  Also in 2003, the Permanent Subcommittee on Investigations of

the Senate Committee on Governmental Affairs released a report that clearly

indicated that the interest rate swap effectively eliminated the premium component

of the loan.[30]  These facts would have alerted an objectively reasonable person to

explore whether Deutsche Bank knew of the effect of the interest rate swap, and, if

so, whether Deutsche Bank concealed such knowledge.  While it is impossible to

tell in hindsight whether such an investigation would have borne fruit, there is no

evidence that Becnel even attempted to conduct it.  Instead of making an effort to

look into Deutsche Bank's knowledge and potential concealment of the interest

rate swap, Becnel merely states that he was "unable until now to discover facts that

would support a claim of fraud against Deutsche Bank."[31]  Indeed, the only

explanation that can plausibly be deduced from his declaration is that he believed

---

[29]     Becnel Class Action Complaint at ¶ 160.

[30]     *See* Appendix A of Report Prepared by the Minority Staff of the
Permanent Subcommittee on Investigations of the Senate Committee on
Governmental Affairs, Ex. 5 to Becnel Decl., at 121.

[31]     Becnel Decl. at 8.

that his membership in the Kottler class action – which was not dismissed until

2010 – relieved him of the duty to investigate other theories of fraud.[32]

       If a plaintiff is allowed to try every theory of the case that the facts

might reasonably support *seriatim*, and simply assert that by pursuing one theory,

he was relieved from the obligation to investigate the others, the discovery

limitations period would be a nullity.  The only limit on the length of time a

plaintiff would have to bring a claim would be the creativity of the plaintiff's

lawyers in dreaming up new theories of the case.  "It is the knowledge of facts not

legal theories," however, that triggers the two-year period of the discovery rule.[33]

Therefore, I find that Becnel should have investigated the modified theory of fraud,

described above, that he now seeks leave to plead as early as 2003.  He did not do

so, and therefore must be charged with knowledge of the fraud as of 2005, by

which time the discovery rule period would have elapsed.  Now, near the end of

2011, his proposed amended complaint is plainly time-barred.  Accordingly, his

proposed amendment is futile, and leave to file it is denied.[34]

---

[32]    *See id.* at 2-3.  *See also* Rep. Mem. at 2.

[33]    *TMG-II v.  Price Waterhouse & Co.*, 572 N.Y.S. 2d 6, 8 (1st Dept. 1991).

[34]    Becnel also claims that the statute of limitations should be tolled by the equitable doctrine of fraudulent concealment because Deutsche Bank "actively concealed . . that it knew the premium loans was [sic] eliminated by the interest

2011, his proposed amended complaint is plainly time-barred.  Accordingly, his

proposed amendment is futile, and leave to file it is denied.[34]

## V.    CONCLUSION

For the reasons given above, Becnel's motion is denied.  The Clerk of

the Court is directed to close this motion (Docket No. 23).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 21, 2011

---

[34]      Becnel also claims that the statute of limitations should be tolled by
the equitable doctrine of fraudulent concealment because Deutsche Bank "actively
concealed . . that it knew the premium loans was [sic] eliminated by the interest
rate swap until it entered into the NPA in December 2010."  Rep. Mem. at 9.  The
basis of this claim is the testimony of William Boyle, a former Vice President at
Deutsche Bank, before a Senate Committee in 2003.  *See id.*  However, the same
Senate Report that contained that testimony also stated that the effect of the
interest-rate swap was "to reduce the loan interest rate to a market-based rate,"
effectively eliminating the premium component of the loan.  Rep. Mem. at 10.  As
noted above, this fact, taken together with Deutsche Bank's deep involvement in
the BLIPS scheme, gave rise to a duty to inquire further as to extent of Deutsche
Bank's knowledge of the effects that the interest rate swap would have.  That is,
even though Boyle's testimony may have concealed the true extent of Deutsche
Bank's knowledge, all of the facts necessary to give rise to the duty to inquire
under the discovery rule were still plainly available to Becnel.  Instead of
investigating, Becnel decided to proceed with a different theory of fraud.
Equitable tolling based on fraudulent concealment is simply not warranted by
these facts.

-13-

**-Appearances-**

**For Plaintiffs:**

Brian G. Isaacson, Esq.
Mark J. Wilson, Esq.
Isaacson & Wilson, P.S.
1200 Fifth Avenue
Suite 1900
Seattle, Washington 98101
(206) 448-1011

**For Defendants:**

Allan Noel Taffet, Esq.
Keith Evan Blackman, Esq.
Duval & Stachenfeld LLP
101 Park Avenue
11th Floor
New York, New York 10178
(212) 883-1700